**CALLOS PROFESSIONAL EMPLOYMENT, L.L.C., Appellant,**

**v.**

**GRECO, Appellee.**

[Cite as *Callos Professional Employment, L.L.C. v. Greco,* 161 Ohio App.3d 531, 2005-Ohio-2940.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 04–MA–95.

Decided June 6, 2005.

Henderson, Covington, Messenger, Newman & Thomas and Jerry M. Bryan, for appellant.

Bruce M. Broyles, for appellee.

DONOFRIO, Presiding Judge.

{¶ 1} Plaintiff-appellant, Callos Professional Employment, L.L.C., appeals from a Mahoning County Common Pleas Court judgment granting partial summary judgment in favor of defendant-appellee, Lillian Greco, on a claim to enforce a buy-sell agreement.

{¶ 2} Appellant is an Ohio limited liability company that is the successor by merger with Callos Professional Employment, Inc. ("Callos Inc."). Appellee is a former employee of Callos Inc. During her employment at Callos Inc., appellee purchased seven shares of Callos Inc. stock for $350.

{¶ 3} Appellant filed a complaint against appellee for a declaratory judgment, injunctive relief, and for money it claims it accidentally paid to appellee. In the complaint, appellant alleged that as a condition of appellee's stock purchase, she

was required to sell her shares back to Callos Inc. upon her termination with the company. Appellant further alleged that Callos Inc. was required to buy the shares back at double the purchase price. Appellant stated that it has demanded that appellee sell back her shares for $700, but she has refused in breach of contract. Appellee filed a cross-claim asking the court to set aside the merger, to order an accounting, to award damages, and to award a statutory forfeiture.

{¶ 4} Appellee subsequently filed a motion for partial summary judgment on the issue of whether she was required to redeem her shares. She argued that there was no written buy-sell agreement, nor was there any restriction on the stock certificate. Appellee contended that absent some written proof of the alleged buy-sell agreement, she was entitled to a judgment that she could keep the stock.

{¶ 5} The trial court granted appellee partial summary judgment on May 6, 2004. The court found that a shareholder agreement must be in writing.

{¶ 6} Appellant filed a timely notice of appeal on May 19, 2004. With this court's leave, the trial court issued an amended judgment entry restating that a shareholder agreement must be in writing, stating that this partial summary judgment precluded the declaratory and injunctive relief requested in appellant's first and second counts, and finding that there was no just reason for delay. We then found that this case was ripe for review.

{¶ 7} Appellant alleges two assignments of error, the first of which states:

{¶ 8} "The trial court erred in holding that a stock purchase and sale agreement between an R.C. Chapter 1701 corporation and a shareholder must be in writing to be enforceable."

{¶ 9} Appellant argues that the trial court failed to properly apply R.C. 1701.35, which provides:

{¶ 10} "(A) A corporation by its directors may purchase shares of any class issued by it, in any of the following instances:

{¶ 11} "(1) When the articles authorize the redemption of such shares and do not prohibit such purchase;

{¶ 12} " * * *

{¶ 13} "(5) From a person who has purchased such shares from the corporation under an agreement reserving to the corporation the right to repurchase or obligating it to repurchase."

{¶ 14} Appellant points out that notably absent from this section is any requirement that the agreement be in writing. It argues that the trial court erred by imposing the requirement that such a buy-sell agreement be in writing.

{¶ 15} Appellant asserts that appellee relied on R.C. Chapter 1785, which governs professional associations. It acknowledges that the Ohio Supreme Court has held that a professional association formed under R.C. Chapter 1785 is not required to redeem its shares upon a shareholder/employee's separation from employment absent a provision in the articles of incorporation or in some extrinsic document requiring that the shares be redeemed. *Colaluca v. Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A.* (1995), 72 Ohio St.3d 229, 648 N.E.2d 1341, paragraph one of the syllabus. However, appellant argues, that is not the case here, because Callos Inc. was not a professional association. It was an R.C. Chapter 1701 general corporation. Furthermore, appellant notes that in *Colaluca* there was no allegation of a buy-sell agreement as there is here.

{¶ 16} Instead, appellant compares this case to *Blake v. Faulkner* (Nov. 6, 1996), 3d Dist. Nos. 17–95–12 and 17–95–13, 1996 WL 669852. In *Blake,* the plaintiff was a shareholder in a law firm corporation. Upon his separation from the firm, he alleged that the trial court could not force him to relinquish his stock in the firm. The plaintiff relied on *Colaluca* for support. The Third District distinguished the case from *Colaluca* for several reasons. First, the court stated that the plaintiff would be correct if the law firm had been formed under R.C. Chapter 1785, no express terms of redemption were in the articles or incorporation, and no buy-sell agreement existed. It noted that in its case, the law firm was incorporated under R.C. 1701.54. It also noted that the jury had found that a stock-redemption agreement existed between the parties. Second, the court observed that in *Colaluca,* the defendant law firm did not wish to redeem the former associate's share. However, in its case, the defendants expressed interest in redeeming the plaintiff's shares.

{¶ 17} Here, appellant argues that we should follow the Third District's reasoning in not applying *Colaluca* to this case.

{¶ 18} In response, appellee argues that R.C. Chapter 1701, under which Callos Inc. was incorporated, sets forth the requirement that a restriction on transfer and right of redemption must be in writing. She points to various statutory sections for support, including R.C. 1701.04(A)(3) (articles of incorporation shall set forth the express terms, if any, of the shares), 1701.06(A)(3) (express terms of the shares may include statements specifying redemption rights and price), 1701.06(A)(13) (express terms of the shares may include other special rights and privileges, and qualifications or restrictions on shares), 1701.23(A) (by the express terms of shares, they may be redeemable at the option of the corporation, in such a manner as provided in the express terms), and 1701.25(A)(5)(a)(b)(c) (each certificate shall state express terms, or a summary of express terms, or a statement that the corporation will mail a copy of the express terms upon written request, or a statement that express terms are incorporated by reference).

{¶ 19} Appellee notes that the articles of incorporation do not include any express terms regarding redemption. She also asserts that no written buy-sell agreement exists. Absent one of these two alternatives, appellee argues that *Colaluca* applies to this case and, therefore, she cannot be forced to sell her shares to appellant.

{¶ 20} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. *Cole v. Am. Indus. & Resources Corp.* (1998), 128 Ohio App.3d 546, 552, 715 N.E.2d 1179. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377. A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.* (1995), 104 Ohio App.3d 598, 603, 662 N.E.2d 1088, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 21} This case turns on whether the alleged buy-sell agreement had to be in writing. If it did, we will uphold summary judgment since appellant did not produce a writing setting out the terms of the agreement. The determination of whether the alleged buy-sell agreement had to be in writing depends on whether *Colaluca* applies to this case.

{¶ 22} What appellant fails to mention about *Colaluca* is that although it was an R.C. Chapter 1785 professional association's share of stock at issue, the Ohio Supreme Court reasoned that since R.C. Chapter 1785 was silent on the issue of redemption of shares of stock issued by a legal professional association, it would look to the provisions of R.C. Chapter 1701, which govern corporations, relating to the issue of redemption for guidance. The court then held:

{¶ 23} "Absent a provision in the articles of incorporation or in some extrinsic document (like a buy-sell agreement) requiring that a share or shares be redeemed, a legal professional association, formed pursuant to R.C. Chapter 1785, is not obligated to redeem the stock of a shareholder/employee who separates or is separated from his or her employment with the professional association." Id., 72 Ohio St.3d 229, 648 N.E.2d 1341, at syllabus.

{¶ 24} We cannot sufficiently distinguish *Colaluca* from the case at bar. While *Colaluca* dealt with an R.C. Chapter 1785 professional association, the Supreme Court relied entirely on corporation law as set out in R.C. Chapter 1701 in reaching its decision. Therefore, we will apply *Colaluca* to this case. Specifically, the court relied on R.C. 1701.23(A), which provides:

{¶ 25} "By the *express terms* of shares of any class or series, such shares may be redeemable, in whole at one time or in part from time to time, at the option of the corporation, or at a specified time or event, in such manner and upon such conditions, price, and notice as are provided in said *express terms*. The exercise of such right of redemption shall, however, be subject to the limitations provided in section 1701.35 of the Revised Code." (Emphasis added.)

{¶ 26} The court then noted that "express terms" of shares are "the statements expressed in the articles with respect to such shares." R.C. 1701.01(I); *Colaluca,* 72 Ohio St.3d at 232, 648 N.E.2d 1341.

{¶ 27} Appellant urges that R.C. 1701.35(A)(5), which provides that a corporation may purchase shares of any class issued by it from a person who purchased the shares from the corporation under an agreement reserving to the corporation the right to repurchase, expressly provides it the right to redeem the stock from appellee. However, appellant is reading this section in isolation. R.C. 1701.35 should be read in conjunction with R.C. 1701.23(A), as set out above. And by the terms of R.C. 1701.23(A), the express terms of the shares must set out the conditions, price, and notice of redemption. In this case, there is no indication that the express terms of the shares set out these requirements.

{¶ 28} It may seem that by relying on *Colaluca,* our opinion conflicts with *Blake.* However, while *Blake* differentiated itself from *Colaluca,* the distinctions it drew do not seem sufficient to distinguish this case and not apply *Colaluca*'s holding. The *Blake* court found that because it was dealing with a corporation instead of a professional association as in *Colaluca,* it was distinguishable. But the *Colaluca* court applied corporation law. Thus, it is difficult to understand why this would make a difference. Furthermore, the *Blake* court also stated that the jury had found that a stock-redemption agreement existed. However, it made no mention of whether the agreement was set out in a buy-sell agreement. If it was, this case is distinguishable for that reason.

{¶ 29} Thus, based on *Colaluca's* reasoning and the applicable statutory sections, appellant's first assignment of error is without merit.

■ {¶ 30} Appellant's second assignment of error states:

{¶ 31} "The trial court erred in failing to consider extrinsic evidence of the existence and terms of a stock purchase and sale agreement between an R.C. Chapter 1701 corporation and a shareholder."

{¶ 32} Appellant argues that the trial court should have considered the extrinsic evidence it presented. Specifically, appellant asserts that the trial court ignored the language on the stock certificate that states: "THE TRANSFER OF THESE SHARES IS RESTRICTED BY AGREEMENT OF THE SHARE-HOLDERS AND THE CORPORATION." Additionally, appellant claims that

the minutes of a shareholders' meeting reflect the buy-sell agreement. And appellant asserts that the evidence demonstrated that other employees, situated similarly to appellant, complied with the terms of the buy-sell agreement.

{¶ 33} Appellant also argues that its performance of its end of the agreement, by issuing the shares and paying appellee dividends, and appellee's partial performance, by paying for the shares, removes the agreement from the statute of frauds.

{¶ 34} Since the alleged buy-sell agreement does not comply with the R.C. Chapter 1701 provisions set out above, any extrinsic evidence of such an agreement is not relevant. *Colaluca* is clear that such an agreement must be in the express terms of the shares or in a writing such as a buy-sell agreement. A nonspecific restriction on the stock certificate and an indication of an agreement in a shareholders' meeting minutes are not the kind of writing the Supreme Court was looking for in *Colaluca.*

{¶ 35} Thus, appellant's second assignment of error is without merit.

{¶ 36} For the reasons stated above, the trial court's judgment is hereby affirmed.

Judgment affirmed.

VUKOVICH and DEGENARO, JJ., concur.